Hugh Gelston *vs.* John Frazier, Mary Ann Frazier, Joseph Cabot, Trustee, and Amos F. Mussleman, Trustee.

AGREEMENT,—SPECIFIC PERFORMANCE OF: TRUSTS AND TRUSTEE: TRUSTEE WHEN A NECESSARY PARTY TO AGREEMENT TO SELL: HUSBAND AND WIFE: SEPARATE ESTATE OF WIFE,—SALE OF: PRESUMPTIONS; INJUNCTION,—DISSOLUTION OF.—J. F. and M. A. F., his wife, in June, 1831, united in executing a deed of the real estate of the wife to J. C., in trust for the sole and separate use and benefit of the wife, so that the said M. A. F., during the joint lives of the husband and wife, should be suffered to hold, use and occupy said real estate, and receive the rents, issues and income thereof, and apply the same to such uses as she might think proper; "or otherwise with the consent and approbation of the said J. C. or his heirs, testified by his or their uniting in the due execution of any deed or deeds of conveyance with the said M. A. F., and either with or without the concurrence of her said husband to sell and dispose of absolutely forever, or for any less estate therein, the whole or any part of the aforesaid piece or parcel of land," &c. And "from and immediately after the decease of either of them," as to so much thereof as may not have been disposed of as before provided, "in trust, &c., for the use and behoof of the survivor" of them, "and the heirs and assigns of such survivor forever, in fee-simple, to be then forthwith conveyed and released to such survivor," &c. On the 13th of May, 1833, the husband and wife united with the trustee, J. C., in leasing said real estate by an instrument of writing duly acknowledged to W. C. H for ninety-nine years, renewable forever, for the yearly rent of $1,100, payable semi-annually. Annexed to said lease and following the acknowledgments, and bearing the same date therewith, was a covenant signed by the husband and wife, without the trustee, whereby they bound themselves, their heirs, executors and administrators at any time during the continuance of the lease, on payment or tender of payment to them by the said W. C. H., his heirs or assigns, to execute to him or them a good and sufficient deed of conveyance in fee simple of said real estate. In 1839, H. G. became the assignee of said lease, and in 1864, tendered to the husband and wife, in the currency of the U. S., the sum stipulated in the covenant, and demanded from them a deed of said real estate in fee-simple. This tender being declined unless paid in gold and silver, H. G. filed a bill in equity for a specific performance of the covenant, and an injunction restraining the husband and wife from proceeding to collect further rent. The injunction was granted, and after answers filed, motion to dissolve and testimony taken, the cause was heard on motion to dissolve.—HELD:

1st. That without the consent of the trustee to the sale, in the way specified in the deed, (in the absence of fraud,) a Court cannot treat him as a party to it and decree him to perform it, and his execution of the deed would be necessary to convey to the purchaser the fee which is legally in him: The agreement, therefore, is without an essential party to it,—the trustee.

2nd. That the effect of the agreement, if good in other respects, would be to divest the wife of her separate control of the proceeds of sale, by providing for the

payment of the money to the *husband and wife*, thus changing the character of the trust and enabling the husband to participate in the receipt and control of the proceeds if paid in their joint lives, thereby endangering the entire fund and leading to the destruction of the trust itself during her life.

3rd. That the *agreement is repugnant to*, and in violation of the trust which secured to the wife a separate estate, and which a Court of Equity must regard when called upon to enforce a contract made under it.

4th. That the very fact that the covenant was annexed to the lease as a separate and distinct agreement, in which the trustee forbore to unite, though cognizant of it, and uniting in the lease itself, is a circumstance to show his dissent from its provisions, and that these did not commend themselves as within the sphere of the trust, or as consistent with it.

5th. That the injunction was ancillary, and the complainant's right to it depended upon the validity and sufficiency of the covenant, and this being fatally defective, the injunction was properly dissolved.

APPEAL from the Circuit Court of Baltimore city.

This was an appeal from an order of the Court below, (ALEXANDER, J.,) passed on the 31st of March, 1866, dissolving the injunction previously granted in the case, whereby the appellees were enjoined from collecting certain rents from the appellant. The opinion of this Court contains a full statement of the case.

The cause was argued before BOWIE, C. J., and GOLDS-BOROUGH, COCHRAN and WEISEL, J.

*Wm. Schley* and *T. A. Linthicum*, for the appellant, argued :

That the injunction was properly issued upon the case made by the bill, because :

1. Equity having possessed itself of the subject matter, will interfere by injunction to prevent multiplicity of suits. *Caples vs. Shipley*, 17 *Md. Rep.*, 179. *Lucas vs. McBlair*, 12 *G. & J.*, 1. *Amelung vs. Seekamp*, 9 *G. & J.*, 468. *Glenn vs. Fowler*, 8 *G. & J.*, 340. *Shipley vs. Ritter*, 7 *Md. Rep.*, 408. *Lynch vs. Colgate*, 2 *H. & J.*, 34.

2. And to restrain proceedings at law where the defendant has a defence which is only available in equity.

3. The material averments being admitted by the answers, and where denied, sustained by the proof in the cause, the injunction should continue till final hearing. *Alexander vs. Ghiselin*, 5 *Gill*, 138. *Washington University vs. Green*, 1 *Md. Ch. Dec.*, 97.

4. The charges of the bill are not sufficiently denied by the answer to dissolve the injunction. *Fitzhugh vs. McPherson*, 3 *Gill*, 408. *Doub vs. Barnes*, 4 *Gill*, 1. *Kent vs. Ricards*, 3 *Md. Ch. Dec.*, 392. *Hardy vs. Summers*, 10 *G. & J.*, 316. *Drury vs. Roberts*, 2 *Md. Ch. Dec.*, 157.

The deed of trust confers upon Mary Ann Frazier the power of disposition over the whole estate and property, restricted only as to the manner in which deeds of conveyance therefor are to be made, and the contract endorsed upon and annexed to the lease, being admitted by the answer, shows the intention upon the part of the donee of the power, together with her husband, to execute that power by a conveyance in fee upon the condition therein mentioned, and is such a contract or covenant as she, a married woman, having a separate estate, has the right to make, and which is binding upon her to the extent of the power. 15 *Barbour*, 555. *Hulme vs. Tenant, Smith's Le. Ca.*, 511. *Jacques vs. The Meth. Church*, 17 *Johnson.* *Macqueen on Husband & Wife*, 66 *Law Library*, 300, 301. *Cooke vs. Husbands*, 11 *Md. Rep.*, 492. *Hardy vs. Summers*, 10 *G. & J.*, 316. *Powell on Contracts*, (60.) *Stead vs. Nelson*, 2 *Beavan*, 245. *Price, &c., vs. Bigham*, 7 *H. & J.*, 296. *Tiernan vs. Poor*, 1 *G. & J.*, 266.

The contract is fair, just, reasonable, *bona fide*, mutual and certain, in all its parts, possessing all the requisites of a legal, valid, binding contract. *Stansbury vs. Fringer*, 11 *G. & J.*, 149. *Schollenberger vs. Brunton*, 3 *Am. L. R., N. S.*, 591. And this covenant is a covenant running

with the land, and passes to the assignee of the lessee, and vests by assignment in the appellant, Gelston, all the rights of Wm. C. Harris, to extinguish the ground-rent. *Spencer's Case,* 1 *Smith's Leading Cases,* 115. *Vanhorn vs. Crain,* 1 *Paige,* 455.

The lease and the covenant endorsed thereon, constitute and form one entire and inseparable agreement or lease, and the covenant is as valid and binding as if incorporated in the lease before the attestation clause, and Cabot, the trustee, signed, sealed and delivered the lease with this covenant annexed to and endorsed thereon, and thereby expressed and declared his assent to the entire paper and its contents, and by exhibit H. G., No. 4, in 1843, re-affirms this consent and approbation. *Vanhorn vs. Crain,* 1 *Paige,* 455.

It is not required that the trustee should unite with the wife in contracts or covenants, for sale or for conveyance, because the trustee holds merely the naked, legal title, and has no interest in the property to be bound by such covenant or contract. He is only required to testify to his giving his assent or approbation by uniting in the deed or deeds of conveyance, executed or to be executed in consummation of the contracts of the donee of the power.

The Act of Congress of the United States, approved February 25th, 1862, making the treasury notes of the United States, issued thereunder, a legal tender as therein provided, for all debts, demands, &c., &c., except as therein excepted, is a valid and constitutional exercise of the powers vested in Congress by the Constitution. *Md. Bank vs. Vandyke,* 27 *N. Y.,* 400. *Birks vs. Tippet,* 1 *Saunders* 28. *Schollenberger vs. Bunton,* 3 *Am. L. R.,* 591. *Carpenter vs. Atherton,* 3 *Am. L. R.*

Another refusal of the appellee to accept of the sum of $18,333.33⅓ in money made by said Act of Congress, a legal tender, is in legal effect the same as a refusal to ac-

copt gold and silver if tendered. *Buel vs. Pumphrey,* 2 *Md. Rep.,* 261. *Dent vs. Dunn,* 3 *Camp.,* 296.

The petition filed by the appellees on the 19th day of June, 1865, is an express review of all objections to the kind of money tendered.

*Wm. S. Waters* and *A. F. Musselman* for the appellees.

This is a bill for the specific performance of a contract. The contract to be enforced is the covenant annexed to the lease of Cabot, trustee, and Mary A. Frazier, to Harris. Said covenant was executed by John Frazier and Mary A. Frazier only. The persons against whom the bill is sought to be enforced, are Cabot, trustee, Musselman, trustee, and Frazier and wife. This is the case made by the bill, and no other contract can be enforced. *Chambers vs. Chalmers,* 4 *G. & J.,* 420, 438.

The alleged contract is that of a married woman; in regard to her separate property, such a person is peculiarly protected by the law. Generally her contracts are void in law, and it is only so far as the statute authorizes the contrary that they have any efficacy, and the enabling statute must be strictly pursued. *Johns vs. Reardon & Wife,* 11 *Md. Rep.,* 465 In a Court of Equity, however, she is, under certain restrictions, allowed to contract in reference to her separate estate. When a separate estate is given to her generally, and nothing said about her right to dispose of it, she has the power of disposition, but when the instrument creating the separate estate provides a mode and manner in which she shall convey, she can convey only in the manner and mode named in the instrument, and any other conveyance by her will be a nullity. *Cooke vs. Husbands,* 11 *Md. Rep.,* 492, 503. *Tiernan vs. Poor,* 1 *G. & J.,* 229. *Lowry vs. Tiernan & Williamson,* 2 *H. & G.,* 34. 4 *Kent,* 330. *Miller & Mayhew vs. Williamson,* 5 *Md. Rep.,* 220, 234, 235.

The object of placing restrictions upon alienation, and providing a manner of alienation, is to protect the wife, and any departure from the strict mode destroys the protection; no departure from this mode will be tolerated. Nor will a Court of Equity undertake to substitute any other mode, or aid any of the parties in the trust, in carrying out any other mode than the strict mode provided in the settlement. *Lowry vs. Tiernan,* 2 *H. & G.,* 40. *Miller & Mayhew vs. Williamson,* 5 *Md. Rep.,* 220. *Hopkins vs. Myall,* 2 *Russ. & My.,* 86.

The contract in question is a separate contract by parties different from those to the lease, and with different representatives of parties. The lease is by Cabot, trustee, and Mary Frazier, with Harris, his executors, &c. The covenant is by John and Mary Frazier with Harris, his heirs, &c. The first contract is within the mode provided by the trust; the second is not, and is void, or as though it had never been. No Court of Chancery will aid it, because no Court will deprive a married woman of that protection which the trust throws around her. *Tiernan vs. Poor,* 1 *G & J.,* 229, and cases *supra.*

There is no subsequent contract; that alleged in exhibit No. 4 is not a valid and binding contract within or without the power so as to bind Mrs. Frazier or any one, if the first contract appended to the lease is void.

1. It is without consideration.

2. It is not a deed on the part of Cabot, trustee.

3. There is no pretence of anything, but a parol or implied assent on the part of Mrs. Frazier.

4. No pretence that she ever assented to it except by agent, to which there are the following objections:

(A.) She has no power to appoint an attorney. *Wallingsford vs. Wallingsford,* 6 *H. & J.,* 485, 490.

(B.) Her agent was, if her agent at all, only to collect rents; not to make a contract to convey her property.

( C.) The contract must be in writing and sealed to bind the parties, and in order to authorize an agent to execute an instrument of that kind, he must be constituted with the same solemnity.

( D.) Both the contract and the constitution of the agency, independent of the provisions of the trust, are required, by the Statute of Frauds, to be in writing. *O'Conner vs. Speight,* 1 *Sch. & Lef.,* 306.

But it is said it would be inequitable to allow Mrs. Frazier now to disavow her contract, she having heretofore acquiesced in it.   Our answer is:

1st.  Her acquiescence has been at the persistent demand of the complainant, and for his own benefit, and not for his disadvantage.

2nd.  The very object of the law and of the trust, is to protect Mrs. Frazier from her loose declaration, and from her presumed acquiescence, and to protect her against every other form of obligation, except that mentioned in the creation of the trust.

3rd.  There can be no acquiescence to bind any one, unless it is proved to the satisfaction of the Court that the party made it knowing at the time her legal and equitable rights ; knowing that the contract was void, and that the act she was doing was with the object to make that good which was void.   *Hoffman Steam, &c., vs. Cumberland Co.,* 16 *Md. Rep.,* 456, 508.

4. The object of the bill is to compel Cabot, trustee, to exercise a discretion, which the trust lodges with him for the wife's protection, and which no Court of Chancery will control.   *Hill on Trustees,* 488, 211, 212.

But suppose, for the sake of the argument, that Cabot's name was signed to the covenant, and sealed by him, and it was executed according to all the requisites of the trust, even then the complainant is not in a position to claim its enforcement in this bill.   He must have tendered all the

rent in arrears, as well as the principal sum, before his right accrues. It is conceded, that the rent was not all paid, but claimed that by a contract binding on Mrs. Frazier, the complainant is excused from paying all. Is the complainant so excused? He is not.

It is said that he is excused by the tender made in 1843, and the agreement thereupon in exhibit 4, filed with the bill. This contract only proposes to release it for two years, with the privilege of redemption on payment of $6,333.33⅓ in cash, and balance of $12,000 in instalments, for which notes were to be given, and these secured by a mortgage. Mrs. Frazier is not bound by this contract. Because:

1. It is such a contract as is required to be in writing by the Statute of Frauds. She never authorized any one in writing to sign it in her behalf, nor did any one sign it, professing to do so as her attorney; she did not sign it herself. *O'Conner vs. Speight*, 1 *Sch. & Lef.*, 306. 2 *Leigh's Nisi Prius*, 1021, 1039.

The answer denying the contract set up in the bill, need not plead or rely upon the Statute of Frauds. *Small vs. Owings*, 1 *Md. Ch. Dec.*, 363. *Cozine vs. Graham*, 2 *Paige's Ch.*, 177, 181. 3 *Paige's Ch.*, 478. 11 *Paige's Ch.*, 405, 408. *Story's Eq. Pl.*, sec. 763, note 2.

2. She never in fact appointed an attorney to sign such instrument, and could appoint none. *Wallingsford vs. Wallingsford*, 6 *H. & J.*, 490.

3. She never ratified such contract.

4. Her acts of acquiescence could not bind her, because she did not know her rights, or at least it does not appear to the Court that she understood them, and intended to bind them. *Hoffman Steam Co. vs. Cumberland Coal Co.*, 16 *Md. Rep.*, 456, 508.

5. Her only acts were receipts for rents, from her husband's agent, and that of only part of the rents, her

receipts for part only of the rent, or receipts in full, when in fact only part of the rents were paid to her, cannot bind her. Receipts are only *prima facie*, and may be rebutted. A release only could discharge. *Geiser vs. Kershner, 4 G. & J.*, 305. *Jones vs. Ricketts, 7 Md. Rep.*, 108, 116. *Campbell vs. Booth, 8 Md. Rep.*, 115, 107. 1 *Leigh's N. P.*, 652. *Hardy vs. Cox, 5 Gill*, 189. *Co. Litt.*, 264. *Blake's Case, 6 Coke Rep.*, 44. *Rogers vs. Payne, 2 Wilson*, 376.

6. The husband had no power to dispose of her rights.

7. Mr. Cabot, trustee, alone had no power to do so.

8. The trustee and lessor can only be discharged by receipts, as will appear in the lease, and all the provisions of the trust are arranged for her protection. To dispense with them, is to break up the trust. *Methodist Church vs. Jacques, 3 John. Ch.*, 78. *Lowry vs. Tiernan, 2 H. & G.*, 34, 40. *Miller & Mayhew vs. Williamson, 5 Md. Rep.*, 220, 235.

9. The contract was a fraud upon her rights, and she had, at any time within twenty years, a right to call the complainant and her trustee into Court, to have the arrears of rent made up to her. The Statute of uses of Henry VIII. does not apply here. See same cases as above, and also *Dugan vs. Gittings, 3 Gill*, 138. *Bowie vs. Stonestreet, 6 Md. Rep.*, 418. *Ware vs. Richardson, 3 Md. Rep.*, 505.

10. The covenant to pay rent could not be released by parol; this could only be done by release under seal, or by payment in full in fact. 1 *Leigh's N. P.*, 652, *Coke Litt.*, 264, *b*. *Littler vs. Holland, 3 Term Rep.*, 590. *Blake's Case, 6 Coke*, 44. *Rogers vs. Payne, 2 Wilson*, 376. *Smith vs. Wilson, 8 East.*, 437.

11. There was a subsequent agreement marked H. G., No. 5. This is void for the reasons already given, and still more for the following:

1. The contract does not even state a consideration, which

it must do, and it is in fact without one,—no tender having been made.

2. It does not purport to be executed by Mrs. Frazier, by any agent of Mrs. Frazier, or agent of any other person.

The agreement of November, 1855, and subsequent agreements:—as to these, no written agreements are shown executed by any one.

The subsequent receipts by Messrs. Williams and Mus-selman were only for the particular rents which they were authorized to collect. They were mere attorneys to collect, and had no power to waive any rights which Mrs. Frazier might have; the complainant paid to them semi-annually, the rent in full of $550, during the time they collected the rents from about 1862, to May, 1864, inclusive.

Mrs. Mary Frazier has denied that she is bound by any of the agreements, and the burden of proof is upon the complainant to show that she was, and that the agreements themselves are equitable and right, agreeable to the Stat-ute of Frauds, and of binding force, according to the pro-visions of the deed of trust.

The contract appended to the lease wants mutuality, and a Court of Equity will not enforce it. The covenant is separate entirely from the lease, independent of it, by dif-ferent parties, and has a different subject. The Court can-not go into any loose conjectures as to the motives which induced the lease or covenant. There are no motives proved, and even if there were, they could not control or vary the written contract. It must stand or fall by its own provi-sions. *Geiger vs. Greene,* 4 *Gill,* 472. *Allen vs. Burke,* 2 *Md. Ch. Dec,* 534. *Duvall vs. Myers,* 2 *Md. Ch. Dec.,* 401. *Smith vs. Crandall,* 20 *Md. Rep.,* 500, &c.

Where the Court at final hearing would dismiss the bill, there could be no ground for granting an injunction merely to protect the property pending the suit for specific per-formance. *Geiger vs. Greene,* 4 *Gill,* 472, &c.

The complainant has no interest in the contract sued upon. It is not a covenant running with the land, and has none of the requisites of such. It is personal to Harris and his assigns. *Flight vs. Glossop*, 2 *Bingham*, *N. S.*, 125. *Wheelock vs. Thayer*, 16 *Pick.*, 68. *Plymouth vs. Carver*, 16 *Pick.*, 183. *Keppel vs. Bailey*, 2 *Mylne & Keene*, 517, 530. *Webb vs Russell*, 3 *Term R.*, 393.

The injunction will be dissolved and the bill dismissed, if it appears to the Court that the contract cannot be specifically performed. *Geiger vs. Greene*, 4 *Gill*, 472. 2 *Md. Ch. Dec* , 534. 2 *Md. Ch. Dec.*, 401.

The defendants are entitled to have the order dissolving the injunction affirmed, and the bill dismissed by this Court, or the cause remanded with directions to the Court below to dismiss the bill with costs to the appellees. 4 *Gill*, 472, &c.

WEISEL, J., delivered the opinion of this Court.

We think the Circuit Court of Baltimore city committed no error in the order for dissolving the injunction issued in this case, from which this appeal was taken.

In June, 1831, John Frazier, and Mary Ann, his wife, united in a deed by which they conveyed the real estate of the wife, situated in the city of Baltimore, to Joseph Cabot, in fee for the uses and trusts therein expressed, as follows:

"To have and to hold the lot, piece or parcel of ground and premises above described, with the appurtenances, unto the said Joseph Cabot, his heirs and assigns forever; in trust and confidence, nevertheless, and to, for and upon the uses and to the ends, interests and purposes hereinafter mentioned, expressed and declared of and concerning the same, that is to say: In trust for the sole and separate use, benefit and behoof of the said Mary Ann Frazier, so that she, during the joint lives of the said John and Mary Ann, be suffered and permitted either to hold, use, occupy

and enjoy the said ground and premises, or the clear rents, issues and income thereof to receive and take, and such rents, issues and income to apply to such uses as she may think proper, or otherwise with the consent and approbation of the said Joseph Cabot, or his heirs, testified by his or their uniting in the due execution of any deed or deeds of conveyance with the said Mary Ann, and either with or without the concurrence of her said husband, to sell and dispose of absolutely, forever, or for any less estate therein, the whole or any part of the aforesaid piece or parcel of land or ground and premises with the appurtenances, for such price or consideration as the said Mary Ann shall deem fit, and the proceeds to invest in other property, or the same to apply and dispose of as the said Mary Ann shall elect and determine, so that neither the said ground and premises, nor the issues, income or proceeds of the same shall at any time during the natural life of the said Mary Ann, be subject to the power, disposal or control of the said John Frazier, nor be in any manner liable or bound for, or by his debts, contracts or engagements. And from and immediately after the decease of either of them, the said John and Mary Ann Frazier, then as to such part or parts, and so much of said trust estate and property as may remain undisposed of by the said Mary Ann, by deed as aforesaid, in trust for the use and behoof of the survivor or longest liver of the said John and Mary Ann, and the heirs and assigns of such survivor forever in fee-simple, to be then forthwith conveyed and released to such survivor, and his or her heirs and assigns, so that the trust hereby created shall close and be ended, and of, on, or upon no other use, trust, interest or purpose whatsover. And it is hereby declared to be the understanding of the parties hereto, and the true intent and meaning of this instrument, that during the coverture of the said Mary Ann Frazier, her separate receipts for any and all money, being the

avails of this trust, shall be a protection to, and discharge of the trustee, who shall not be held answerable, except for wilful commission or gross negligence in the execution of the trust hereby reposed in him.''

On the 13th day of May, 1833, the trustee, Joseph Cabot, and the said Mary Ann Frazier executed to William C. Harris, his executors, administrators and assigns, a lease for said real estate for the term of ninety-nine years, renewable forever, for the yearly rent of eleven hundred dollars, payable semi-annually. This lease was acknowledged in Baltimore by Mrs. Frazier and by Harris, (who signed and sealed the same as party of the third part,) on the said 13th day of May, 1833 ; and by Joseph Cabot, the trustee, and party of the first part, in Philadelphia, on the 16th day of May, 1833. Annexed to said lease, and following the acknowledgments of the parties to it as aforesaid, was the following covenant, signed, sealed and acknowledged by the said Mary Ann Frazier and her husband, John Frazier, and bearing equal date, both as to the instrument and its acknowledgment, with the lease itself:

"The undersigned, John Frazier, and Mary Ann, his wife, named in the foregoing lease to William C. Harris, do for themselves, their heirs, executors and administrators, covenant with the said William C. Harris, his heirs and assigns, that the said John Frazier and Mary Ann his wife, and their and each of their heirs, shall and will at anytime hereafter, during the continuance of the foregoing lease, at the request and proper cost and charge in the law of the said William C. Harris, his heirs or assigns, and on his or their paying or tendering in payment to the said John Frazier and Mary Ann, his wife, or the survivor of them, or the heirs of the survivor, of the sum of eighteen thousand, three hundred and thirty-three dollars and one third of a dollar, lawful money, over and above all rent accrued by virtue of said lease and then in arrear,

make, execute, acknowledge and deliver, or cause and pro-
cure to be made, executed, acknowledged and delivered to
the said William C. Harris, his heirs and assigns, a good
and sufficient deed of conveyance in fee-simple, of and for
the lot, piece or parcel of ground and premises within
described, with the appurtenances, free, clear and dis-
charged from the rent reserved by said lease, and every
part thereof.

In witness whereof, the said John Frazier, and Mary
Ann, his wife, have hereunto subscribed their names and
affixed their seals, on this thirteenth day of May, in the
year of our Lord, one thousand eight hundred and thirty-
three. ,

JOHN FRAZIER,    ( Seal.)

MARY A. FRAZIER, ( Seal.)''

Of this lease, and all the rights, privileges and appurte-
nances thereto belonging, the appellant, Hugh Gelston, be-
came the assignee, in 1839, under a sale by virtue of a decree
of Baltimore County Court, as a Court of Equity.    Regard-
ing the above covenant as a part of the lease, and running
with the real estate conveyed by it, and as succeeding to
the rights and privileges of Harris under the covenant,
Gelston, in 1843, proceeded to obtain a title to the rever-
sion by tendering to the said Frazier and wife the sum
stipulated in the covenant, and demanding a conveyance
in fee for the land and premises in the lease.    The tender
having, for a consideration, been withdrawn, his relation
as lessee continued to April, 1864, when he notified Mrs.
Frazier that he would, on or before the first of May of that
year, pay the said sum in extinguishment of the rent and
demand again a deed in fee-simple for the leased premi-
ses.    This being declined unless paid in gold or silver, and
Gelston insisting upon paying in the legal tender notes of
the United States, commonly known as "greenbacks," and
having paid the rent to the 1st day of May, 1864, he, in

May, 1865, filed his bill in the Circuit Court of Baltimore city, by which, having alleged more particularly the foregoing matter and other facts and circumstances connected with it, he prayed from the defendants ( Musselman having been made, by decree of Court, trustee in the place of Cabot) a specific performance of said covenant, and also an injunction in the meantime restraining the parties from proceeding to collect further rents by distress, or in any other manner.

The injunction was granted and issued, and after answers filed a motion to dissolve was entered. A commission to take proof was subsequently issued by agreement, executed and returned, and the cause set down for hearing, and heard on the motion to dissolve.

In the view entertained by this Court, of the nature of the covenant which the appellant asks to be specifically performed, it becomes unnecessary to pass upon the other points presented in the briefs of counsel and argued. That taken upon the constitutionality of the legal tender clause in the Act of Congress, approved February 25th, 1862, for issuing treasury notes, was waived in the argument in this Court. If urged, we would have been relieved from reviewing the opinion of the Court below upon it, as will be apparent from what we are about to say upon the main branch of the case.

Returning, then, to the covenant, it cannot escape the notice of the Court, that the trust created by the deed was for the sole and separate use, benefit and estate of Mrs. Frazier during the joint lives of herself and husband. She was to hold, use, occupy and enjoy the property conveyed, or to receive the clear rents, issues, and income thereof, and apply the same to such uses as she might think proper ; or otherwise, to sell and dispose of absolutely, forever, or for any less estate therein, the whole or any part of the property, for such price or consideration as she should deem

fit, and the proceeds to invest in other property, or to apply and dispose of as she should elect and determine. But it is expressly provided, that in making such sale or disposition of any estate in said property, or any part of it, the consent and approbation of the trustee, or his heirs, should be had, and should be testified by his or their uniting in the due execution of any deed or deeds of conveyance with the said Mary Ann Frazier, and either with or without the concurrence of the husband ; and, also, that the said ground and premises should be held, or the issues, income or proceeds invested, applied or disposed of, so that neither the one nor the other should, at any time during her natural life, be subject to the power, disposal or control of her husband, or be in any manner liable or bound for or by his debts, contracts or engagements. It was further provided, that after the decease of either of them, any or so much of the trust estate as might remain undisposed of by her, *by deed as aforesaid*, should be in trust for the use and behoof of the survivor, his or her heirs and assigns, and then forthwith conveyed and released to him or her in fee, so that the trust created by the deed should be closed and ended ; and for or upon no other use, trust, intent or purpose whatsoever was said trust created.

Though the property conveyed in trust was, prior to the deed, her own legal estate, of which she could not be divested, except in the mode prescribed by our legislative enactments, to pass the real estate of a *feme covert*, (*Cheney vs. Tipton*, 3 *Gill*, 327 ; *Johns vs. Reardon*, 11 *Md. Rep.*, 469 ;) yet the conveyance of her husband of it in trust by the deed of June 23rd, 1831, constituted it her separate estate for her use during the joint lives of herself and husband, with power to use or alienate it in a particular way, and, so far as undisposed of, to go in fee to the husband after her death, if he survived her. In this case the deed is not silent as to the mode of alienation, and the mode

specified is a negation of every other mode, and is "paramount law governing and controlling *every contract in relation to it.*"  This was pronounced the settled law in Maryland, in *Cooke vs. Husbands*, 11 *Md. Rep.*, 503, upon the authority of the cases there cited, and has of course been adhered to since.  And in the case of *Tiernan vs. Poor*, 1 *G. & J.*, 229, this Court added, "that no decree could pass against a *feme covert* to carry into effect any contract she might make, unless such contract were within the limits of her *jus disponendi;*" a doctrine emphatically recognized and repeated in *Miller vs. Williamson*, 5 *Md. Rep.*, 234, 235.  With such jealous care is the separate estate of a wife guarded and protected by a Court of Equity.

Applying this test to the contract or covenant entered into with Harris by Frazier and his wife, in relation to the fee-simple interest in the property, we find that the trustee is no party to it, and cannot be bound by it.  It is an agreement by Mrs. Frazier, (with the concurrence of her husband only,) to sell and dispose of the entire fee-simple estate in the property to the lessee, his heirs or assigns, at at any time during the continuance of the lease, upon his or their paying or tendering payment of the stipulated price, but it lacks the consent and approbation of the trustee. This cannot be inferred from his silence, or knowledge or subsequent acts.  The deed conferring the power of sale and disposition, requires it to be testified by his uniting with the wife in the due execution of the instrument.  "Of any deed or deeds of conveyance," is the language of the trust ; but this must necessarily be extended to all binding engagements that would result finally in a conveyance.  For unless the trustee cansent to the sale in the way specified in the deed, ( in the absence of fraud,) a Court connot treat him as a party to it and decree him to perform it, and his execution of the deed would be necessary to convoy to the

44  vol. 26

purchaser the fee which is legally in him. The agreement, therefore, is without an essential party to it,—the trustee.

The effect of the agreement, if good in other respects, would be to divest the wife of her separate control of the proceeds of sale, by providing for the payment of the money to the *husband and wife*; thus changing the character of the trust and enabling the husband to participate in the receipt and control of the proceeds, if paid in their joint lives, thereby endangering the entire fund and leading to the destruction of the trust itself during her life. In this respect the agreement is repugnant to, and in violation of the trust which secured to the wife a separate estate, and which a Court of Equity must regard when called upon to enforce a contract made under it.

The deed of trust was not only recorded, but the lease itself which Harris took, and to which the covenant was annexed in the manner already stated, contained a full recital of the trust itself under which the lease was made and executed. So that the lessee and his assignee, Gelston, had full and entire knowledge of the nature and requirements of the trust.

The lease itself was made in pursuance of and conformity with the trust; but not the covenant which was appended to it. The very fact that it was annexed to the lease, as a separate and distinct agreement, in which the trustee forbore to unite, though cognizant of it, is a circumstance to show his dissent from its provisions, (for he united in the lease itself,) and that these did not commend themselves as within the sphere of the trust, or as consistent with it.

We deem it unnecessary to go into the inquiry whether the covenant was one in gross or one running with the land. The view we have taken of the covenant itself, and of its want of essential requisites to be enforced in equity, is amply sufficient for this case.

The injunction in this case was ancillary, and the com-

plainant's right to it depended upon the validity and sufficiency of the covenant, which we have thus pronounced fatally defective. The injunction was properly dissolved. The cause, however, is to be remanded for further proceedings, to be disposed of on final hearing, in conformity with this opinion. The appellees are entitled to their costs in this Court.

> *Order affirmed and cause remanded,*
> *with costs to the appellees.*

(Decided February 14th, 1867.)