(Decided 13th March, 1872.)

---

MARY ANN FRAZIER, by her next friend D. W. PATTERSON, and A. F. MUSSELMAN, Trustee, *vs.* HUGH GELSTON, and others.

*Lapse of Time as a defence in Equity—Acquiescence— Equitable Estoppel.*

A bill of complaint, filed on the 27th of April, 1864, charged that on the 23d of June, 1831, a deed was executed by the complainant and her husband conveying certain property, in trust for her sole and separate

Frazier *vs.* Gelston, *et al.*

use, so that during the joint lives of herself and husband, she might hold and use the same, or receive the clear rents thereof and apply them as she might think proper, or with the consent of the trustee to sell and dispose of said property absolutely, or of any less estate therein, for such price or consideration as she might deem fit; that in execution of the powers conferred by the deed of trust, the trustee and the complainant, on the 13th of May, 1833, leased said property for the period of ninety-nine years, renewable forever, for the annual rent of $1100, payable in equal semi-annual instalments of $5¯0; that in 1839, under a decree in Equity the leasehold property was assigned to G; that during the year 1843, an agreement in writing signed by the trustee, the husband and an agent of the complainant, was entered into with G by which the annual rent was reduced to $1,000, being $100 less than the complainant was entitled to receive; that from that time to 1863, G paid only $1000 rent per annum; that the sum of $100 balance of rent due and in arrear was retained by the said G in each and every year down to the year 1863; that there was due to the complainant the sum of $100 per annum, from 1843 to 1863, with interest thereon, from the time the same fell due; that the complainant never consented to or acquiesced in said retention, but on the contrary, since 1862, the complainant had repeatedly demanded payment of the rent so withheld, with interest thereon, but that every effort to adjust her lawful claim had been in vain—that the balance of rent so accruing year by year remained due and unpaid by G. The bill also charged that G has in his possession or under his control certain writings consenting to said reduction of rent, also certain books of accounts of payments of said rents, all of which contained material and necessary evidence to the trial of the cause. The bill prayed in substance for a discovery as to the true condition of the dealings between the parties as to the rents, and that a decree might be passed for the payment of the amount ascertained to be due to the complainant, and for general relief. G answered the bill, and among other things, averred the execution by the complainant and her husband, of a covenant annexed to the lease, and bearing equal date therewith, whereby they covenanted to sell the fee simple estate in the property to the lessee, his heirs or assigns, at any time during the continuance of the lease, upon his paying or tendering payment of the sum stipulated therein; and charged that as assignee of the lease, he tendered in October, 1843, to the complainant and her husband, the sum stipulated for the redemption of the property; that their trustee acting for them requested him to withdraw said tender, and in consideration thereof agreed to make a deduction of $70 a year from the rent for the two following years; that said tender was accordingly withdrawn; that this deduction from the annual rent was extended, by successive agreements, to 1st of November, 1855, from which time until the 1st of May, 1860, by further agreement, he was allowed a discount from the annual rent of $37.50;

of all which the complainant had knowledge; that since said last mentioned date he has paid said rent in full. G denied that any agreement was ever made for the reduction of the rent by the sum of $100 a year, and insisted that he had fully paid and satisfied all the rent to which the complainant was entitled; and denied that the case made by the complainant entitled her to any relief in a Court of Equity; and relied upon the staleness of the demand, and limitations. HELD:

1st. That the execution by the complainant of the covenant annexed to the lease, her continued acquiescence in the receipt of the diminished rent, with full knowledge, her failure to make any effort at law or in equity to recover the rents alleged to be in arrear and unpaid, she having, during the while, a trustee and other agent to look after her interests, and lapse of time, combine to make a case where the doctrine of equitable estoppel should be applied, and the claim of the complainant could not be allowed.

2d. That the complainant having failed to make out a case of conscience, good faith and reasonable diligence, was not entitled to the interposition of a Court of Equity.

APPEAL from the Circuit Court of Baltimore City.

The bill of complaint in this case, filed on the 27th of April, 1864, charged that on the 23d of June, 1831, John Frazier and Mary Ann, his wife, executed a deed, in fee simple, of all that lot of ground in the city of Baltimore, bounded on the north by Baltimore street, on the east by Front street, on the south by Plowman street, and on the west by Jones' falls, known as the "Washington Hall Property," (being a portion of the real estate allotted to the said Mary Ann, in the division of the real estate of her father, Bryan Philpot, deceased,) to Joseph Cabot, of the city of Philadelphia, his heirs and assigns, in trust, for the sole and separate use of the said Mary, so that she, during the joint lives of her husband and herself, might hold, use and enjoy the said ground, or receive the clear rents thereof, and apply the same to such uses as she might think proper, or with the consent and approbation of the said Cabot, or his heirs, testified by his or their uniting in the due execution of any deed or deeds of conveyance, and with or without the concurrence of her said husband, might sell and dispose of absolutely, or

of any less estate therein, the whole, or any part of the aforesaid parcel of ground, for such price or consideration as the said Mary Ann might deem fit, &c., &c., so that neither the said ground nor the rents thereof should, during the life of the said Mary Ann, be subject to the power of her husband, nor be liable for his debts or contracts; and from and after the decease of either of them, then, as to so much of said trust estate as might remain undisposed of by the said Mary Ann, by deed as aforesaid, in trust, for the use of the survivor of them and the heir of the survivor in fee, to be forthwith conveyed, so that the trust should be ended; *and for no other use, trust, intent or purpose whatsoever.* That in execution of the powers conferred by the aforesaid deed of trust, the said Joseph and Mary Ann, on the 13th of May, 1833, did lease all of the aforesaid lot of ground to one William C. Harris, for the period of ninety-nine years, renewable forever, at and for the annual rent of $1,100, payable in equal semi-annual instalments of $550, on the first days of May and November, in each and every year.

That on or about the 7th of October, 1837, by decree of Baltimore County Court, passed in a cause between *Gable, et al., against said Harris, and others,* the said leasehold was decreed to be sold; and the same was sold, and on payment of the purchase money, conveyed by deed, duly executed and recorded, to the defendant, H. Gelston, subject to all the rents reserved.

The bill then stated that an agreement in writing, or writings, then in possession of Hugh Gelston, was entered into in 1843, signed by Joseph Cabot, trustee, John Frazier and B. M. Heighe, with Mr. Gelston, by which said annual rent of $1,100, due to the said Mary Ann, was reduced to $1,000 per annum; that from 1843, down to 1863, inclusive, said Gelston paid, in fact, but $1,000 per annum rent, and no more, viz: $500 on the first days of May and November, in each and every year, to said Mary Ann; and that $100 was retained from her by said H. Gelston down to 1863.

The bill stated that there was due to the said Mary Ann the balances of ground rent unpaid, viz: $100 per annum for each year, from 1843 down to May, 1863, on account of said ground rent, over due and unpaid, with interest thereon, from the first days of May and November of each year, when the said $100 per annum, in sums of $50, each, on said first days of May and November, respectively fell due, but were retained by said Gelston; that said Mary Ann never consented to, or acquiesced in said retention of said balances of ground rent, viz: $100 per annum, from year 1843 to 1863, by said Gelston; but she had since 1862, by her attorney, orally and in writing, demanded payment of the same, with interest thereon.

The bill further charged that the said Gelston had possession of the original paper writings signed by the said Cabot, John Frazier and B. M. Heighe, consenting to the reduction of the ground rent from $1,100 to $1,000 per annum; also his original books of account of payments of said rents; and that said writings contained material and necessary evidence; that the complainant could not safely proceed to the trial of the cause without benefit of this testimony.

The bill prayed that Gelston and John Frazier might answer the bill; that Gelston might be required to produce the original paper writings signed by Cabot, John Frazier and B. M. Heighe, Esq., and also the original books of account disclosing all payments on account of said rent made by him to the complainant, or to her agent or attorney, from 1840 or 1841, down to May, 1863, or to furnish copies of the same, certified to be true by a justice of the peace; that said Gelston might render an account, verified by his oath, &c., of all payments of money on account of said rent made by him to the complainant, with the year, month and day of each payment, and the several amounts of money paid on said several days, commencing from 1840 or 1841, down to May, 1863; that an account might be taken, under direction of the Court, of the said several balances of ground rent due

each year, with interest thereon; and that a decree might be passed for the payment of the same to the complainant. The bill also prayed for general relief.

The bill was subsequently amended by making the trustee Cabot a party defendant, and Amos F. Musselman, who had been substituted trustee in place of Cabot, by a decree of the Court, a complainant. John Frazier answered the bill, admitting some of its allegations, averring a want of knowledge of others, and denying that he had any interest in the controversy. Joseph Cabot likewise answered, admitting the execution of the deed of trust, and of the lease to Harris, and the assignment of the latter to Gelston; he also admitted his removal from the trust, and the appointment of Amos F. Musselman in his stead.

Gelston, in his answer, admitted the deed of trust, the lease to Harris and its assignment to himself; he likewise averred that said lease contained a covenant on the part of the complainant and her husband to execute, or cause to be executed and delivered to said Harris, his heirs or assigns, a deed in fee of the said trust property, free and discharged from the rent reserved by said lease, on his or their tendering in payment to the said complainant and her husband, or the survivor of them, and the heirs of the survivor, the sum of $18,333.33\frac{1}{3}$ over and above all rents accrued by virtue of said lease, and then in arrear; that in virtue of said covenant, on the 30th of October, 1843, he tendered the complainant and her husband, through their agent and trustee, Cabot, the sum stipulated for the redemption of said property, and demanded a conveyance in fee of the same; that said trustee, acting for the said complainant and her husband, and by their authority, requested the respondent to withdraw said tender, and agreed that if he would do so, and continue the payment of the rent for two years longer, viz.: to the 1st of November, 1845, he should be allowed $35 out of each half yearly payment; that consequently the respondent withdrew his tender, and continued to pay the rent according to the

agreement for two years longer; that on the 2d of December, 1845, through B. M. Heighe, acting by authority of Cabot, trustee, and the complainant and her husband, the agreement was further extended from the 1st of November, 1845, until the 1st of November, 1850, and afterwards from the 1st of November, 1849, to the 1st of November, 1852; and then to the 1st of November, 1855; that after the 1st of November, 1855, it was agreed that the deduction from the rent should be $18.75 out of each half yearly payment, which agreement continued in force until May 1st, 1860; that the full rent, $550, was paid to said Heighe the 1st of November, 1860, and the 1st of May, 1861; that the rents, in accordance with said agreements, were fully paid to B. M. Heighe, agent and attorney, from whom they were received and accepted in full satisfaction by the complainant up to the 1st of November, 1861, when she notified the respondent not to .pay the rent any longer to Heighe.

The respondent denied that any agreement for the reduction of said rent, other than the aforesaid, had ever been made; he denied that any agreement was ever made by which said rent was reduced by the sum of $100 per year, and that he had in his possession any paper writing or writings containing or evidencing any agreement for the reduction of said rent by the sum of $100 as alleged in the .bill; he further denied that there was any sum of money due and owing to the complainant for rent, as charged in the bill; but on the contrary, the complainant has, from time to time, received all of said rent as the same was paid to her agent by the respondent; and that until the year before the filing of her bill, she never expressed any dissatisfaction with the aforesaid deduction and agreements; .but, on the contrary, that she had fully and unequivocally ratified, confirmed and adopted the agreements aforesaid, as they were from time to time made. The answer also denied that the case made by the complainant entitled her to relief in a Court of Equity; and averred that the claim set up by her was illegal and inequitable, stale and antiquated, and barred by limitations.

With the answer was filed an account under oath as called for, showing payments from 1st of November, 1849, to 1st of May, 1864.

A commission was issued, and the testimony of the complainant, the defendant Gelston, and Musselman the trustee, was taken. Exceptions to testimony were taken by either side, and Gelston also excepted to the jurisdiction of the Court and to the sufficiency of the allegations of the bill.

After argument, an order was passed by the Court (PINK-NEY, J.,) on the 2d of July, 1870, dismissing the bill.

From this order the complainant appealed.

The cause was argued before BARTOL, C. J., STEWART, BOWIE, GRASON and ROBINSON, J.

*A. F. Musselman* and *W. S. Waters*, for the appellants.

All the agreements for the reduction of the semi-annual payments of rent, signed by Cabot trustee, Heighe and John Frazier, founded on the covenant annexed to the lease to Harris, and on an alleged tender, were without consideration and void as against the complainant. Mr. Cabot trustee, was guilty of a breach of trust; Mr. Gelston instigated the same, with knowledge of the trust estate in Cabot, and having refused to refund the balances on request, he is in equity, guilty of fraud upon the trust, and of collusion with Mr. Cabot. Mr. Gelston has no interest in the covenant annexed to the lease. It is not a covenant running with the land, and has none of the requisites of such. The covenant is *not in the body of the deed.* It is personal to Mr. Harris and to his assignees thereof. *Wheelock vs. Thayer,* 16 *Pick. R.,* 68; *Plymouth vs. Carver,* 16 *Pickering,* 183; *Keppel vs. Bailey,* 2 *Mylne & K.,* 517–530; *Webb vs. Russell,* 3 *Term Rep.,* 393; *Flight vs. Gossop,* 2 *Bingham N. S.,* 125.

Mrs. Frazier has her remedy in equity for a *discovery and an account* of the balances of rents, with interest thereon, retained from her by Mr. Gelston by collusion with Cabot,

her trustee. She is a *cestui que trust*, with an equitable estate; and the legal estate standing in a trustee, who has been guilty of breach of trust and collusion, her husband John Frazier having assented to said breach of trust, &c., she has no adequate and complete remedy at law for the old arrearages. Separate equitable estates of married women are peculiarly protected by Courts of Equity. 1 *Story's Eq. Jur.*, secs. 63 a., 64 a., 67; *Johns vs. Reardon and Wife*, 11 *Md.*, 465; *Dugan vs. Gittings*, 3 *Gill*, 162, 163, 164.

The complainant is not barred by lapse of time, *laches* or negligence. She is an innocent party, and without her own default, has sustained a loss. Mr. Cabot trustee, Mr. Gelston and John Frazier assenting, were all guilty of breach of trust, fraud and collusion. The bargains for reducing the rents by said parties, were frauds upon Mrs. Frazier's rights; and she had at any time within twenty years, or within twenty years after the discovery of the frauds, a right to call her trustee or Mr. Gelston into Court to account for said arrears, with interest. *Lowry vs. Tiernan*, 2 *H. & G.*, 34–40; *Miller vs. Williamson*, 5 *Md.*, 220–235; *Dugan vs. Gittings*, 3 *Gill.*, 138–162; *Bowie vs. Stonestreet*, 6 *Md.*, 418; *Hanson vs. Worthington*, 12 *Md.*, 418; *Johns vs. Reardon and Wife*, 11 *Md.*, 465.

Mr. Gelston, by breach of trust, fraud and collusion with the trustee, is, in equity, a trustee of the balances of rent and interest thereon; and in such case he cannot set up the plea of limitations in bar of Mrs. Frazier. *Rolfe vs. Gregory*, 11 *Jurist.*, *N. S.*, 98; *Ernest vs. Croysdill*, 2 *De Gex, Fisher & Jones*, 175, 194, 198.

Mrs. Frazier is not bound by *acquiescence*. No one is bound by this unless it appears clearly to the Court that the party had, at the time, full knowledge of all her rights, legal and equitable, and intended to make that valid and good which she knew to be void. *Adams vs. Clifton*, 1 *Russ.*, 297; *Walker vs. Symonds*, 3 *Swanston*, 1; *Randall vs. Ewington*, 10 *Ves.*, 423; *Tarrant vs. Blanchford*, 1 *De Gex, I. & S.*, 119;

*Cockerell vs. Cholmely,* 1 *R. & M.,* 425; *Marker vs. Marker,* 9 *Hare,* 16; *Hoffman Co. vs. Cumberland Co.,* 16 *Md.,* 456, 508; *Lewin on Trusts,* 663.

The complainant's receipts in full of each half yearly payment, when in fact only part of the same was paid to her, cannot bind her. Receipts are only *prima facie,* and may be rebutted. A release or payment in full only could discharge. Payment of a less sum of money for a greater sum of money, is no satisfaction of a debt without a release. 1 *Greenl. Ev.,* sec. 305; *Geiser vs. Kershner,* 4 *G. & J.,* 305; *Jones vs. Ricketts,* 7 *Md.,* 108–116; *Campbell vs. Booth,* 8 *Md.,* 107–115; *Hardy vs. Cox,* 5 *Gill,* 189–197.

*Isaac D. Jones,* for the appellee, Gelston.

The bill shows no ground for equity jurisdiction. It cannot be maintained on the allegation of rent in arrear. The lease shows that the remedy at law was complete by re-entry, distress, or by action of debt, or covenant. And the evidence shows that both distress and covenant had been repeatedly and successfully resorted to. Each of these recoveries for rent then due, is a conclusive admission that all prior rent had been paid and satisfied.

Acceptance of rent after forfeiture of lease is a waiver; so is an acquittance expressly as rent; so is a distress for rent; and so is an action of covenant brought subsequent to the forfeiture, and the tenant pays the money into Court. *Bacon Abr. Rent,* (*I.*) note *a.*

There is no remedy in equity where the remedy at law is lost by the party's own neglect. So, if he destroy his own remedy to distrain for rent, and debt would not lie for the arrears of rent, he would not be relievable *in equity.* 1 *Story Equity,* sec. 684, (*a.*)

The alleged *want of discovery* does not confer jurisdiction. The equity does not originate in the mere *want of discovery;* but in that such want has been caused by the *defendant's fault.* It will not lie by an agent against his principal, for it is the

agent's duty, not the principal's, to keep the account. It will not lie against an agent, as to a single transaction not tainted by fraud, and where a legal remedy existed. *Adams' Equity,* top 503, 507, *note.*

And by the Code, discovery may be had at law as well as in equity.

The prayer for an account does not confer jurisdiction, as no sufficient grounds are alleged to entitle the complainant to an account.

There was no actual or constructive trust or other relation subsisting between the complainant and Gelston to justify discovery in aid of an account, and no right to an account is shewn by the bill. Gelston was merely a tenant under a lease to pay rent to Cabot, the owner of the fee, who only by the terms of the lease, had the right to resort to legal remedies to enforce payment. By the express terms of the lease, Mrs. Frazier, being *cestui que trust,* might receive the rents, and her receipts therefor were to be a protection to the tenant, and also to the trustee. Mr. Heighe was her agent in the collection of the rent from the date of the lease.

Even if the bill presented a case cognizable in equity, the demand is barred by the statute of limitations. *Wilhelm vs. Caylor,* 32 *Md.,* 151.

The rule that trusts in general, are not barred by limitations only holds as between *cestuis que trust* and trustees; not between *cestuis que trust* and trustees on one side, and strangers on the other. 10 *Bacon Abr. Uses and Trusts, A.,* 192.

In this case, the trust was between Cabot the trustee, and Mrs. Frazier, and does not affect Gelston. *Adams' Equity,* 237, 238; 1 *Story's Equity, sec.* 684, *A. and C.; Hill on Trustees,* 504; *Wych. vs. East India Company,* 3 *P. Wms.,* 309.

The acquiescence of Mrs. Frazier is a complete bar to her claim. 7 *Simons,* 1; *Gouet vs. Richmond,* 9 *Cond. English Ch. Rep.,* 449; *Hercy vs. Dinwoody,* 2 *Ves.,* 92–93; *Funk vs. Newcomer,* 10 *Md.,* 302–317.

The facts of the case show that the agreements for the reduction of rent were *bona fide* made, and may be sustained as a fair and valid " compromise." " To support a compromise it is sufficient that the parties entering into it, thought *at the time* that there was a *bona fide* question between them, though it may eventually turn out there was in fact no such question." *Hartle vs. Stahl and Wife,* 27 *Md.,* 157.

STEWART, J., delivered the opinion of the Court.

The bill of complaint in this case substantially alleges the right of the complainant, a *féme covert,* under a deed of trust and lease, in pursuance thereof, to receive the rent of her property to her exclusive use; that she had a trustee to attend to her interest in the matter, and that she had full authority to discharge her trustee, and the lessee and his representatives from all claims, on account thereof, by her own receipts.

It further avers, that during the year 1843, " an arrangement, contract or agreement, evidenced by a paper writing, signed by Cabot, her trustee; her husband John Frazier, and Benjamin M. Heighe, (who acted as her attorney and agent,) was entered into with Hugh Gelston, the lessee, (and now the respondent,) by which the annual rent was reduced $100 less than she was entitled to receive; that from that time to 1863, Gelston, under the agreement, paid less, by that amount, than she was entitled to; that she never executed any writing, consenting to such reduction; that she never acquiesced in the same, but, on the contrary, by the employment of a different attorney, Gelston was compelled, in 1863, to pay the full rent; that since 1862, she has repeatedly demanded payment of the balance of the rent."

That this balance of rent, accruing year by year from 1843, when the said arrangement was made, to the year 1863, remains due and unpaid by the respondent.

The bill also alleges, that the respondent is in possession of writings and books of account in regard to the rent; that they contain evidence material to the trial of the cause.

Frazier *vs.* Gelston, *et al.*

The prayer of the bill, amongst other matters, is that the books of account and writings may be produced by the respondent, and an account of the rents rendered by him, and for general relief. In substance, for a discovery as to the true condition of the dealings between the parties as to the rents.

Upon the ground of discovery, and the settlement of an account of the rents, and upon the theory of an implied trust between the parties relating thereto, the interference of the Court of Equity is invoked.

The bill contains no allegation of fraud against the respondent for the non-payment of the rent; nor does it allege that she was ignorant of the true character of her claim, as stated in the bill; nor want of capacity on her part to comprehend her rights, or any excuse for the failure to have asserted them more promptly.

The respondent, by answer, insists that he has fully settled for all the rents due to which the complainant is entitled, according to his understanding; and denies that the case made by the complainant entitles her to any relief in a Court of Equity, and relies upon the staleness of the demand and limitation.

The bill, in its whole scope, merely claims to recover for the arrears of rent; and it does not appear, but that resort might have been had to legal proceedings for their collection, without the intervention of a Court of Equity, if reasonable diligence had been used by the complainant after she had knowledge of the reduction, made according to her own testimony.

It is well settled, as a general rule, that the complainant must recover upon the case made by the bill, *secundum allegata et probata,* and if that does not contain matters cognizable in equity, or the allegations are not sustained, the bill must be dismissed.

There is no averment of any fiduciary relation between the parties, nor do any of the allegations or proofs make out a case of fraud or collusion, by which a constructive trust between the parties can arise.

The law never presumes a trust but in case of absolute necessity, for if a Chancery Court presume a trust unnecessarily, or construe a trust by implication of law, any man may be construed out of his estate. Per Lord NOTTINGHAM, in *Cook vs. Fountain*, 3 *Swanston*, 592.

There is no doubt " that in cases of fraud, constructive or actual, Courts of Equity have adopted principles broad and comprehensive, in the application of remedial justice, by converting the offending party into a trustee." *Hill on Trustees*, 203 ; but their exercise depends upon the meritorious circumstances of each case.

Giving to this case the utmost latitude of construction, we do not understand it as establishing any implied trust.

Assuming that the Court has jurisdiction upon the ground of discovery, and an account of the rents, we do not think the complainant has made out a case entitling her to relief.

The complainant, with her husband, executed the covenant annexed to the lease, between Cabot her trustee, herself and Harris, bearing equal date with the lease and its acknowledgment, to wit: on the 13th of May, 1833.

All the rights under this case, with its appurtenances, in the year 1839, became vested in Hugh Gelston, the respondent. Gelston, regarding the covenant as a part of the lease, (to use the language of the Court of Appeals in the case of *Gelston vs. Frazier, et al.*, 26 *Md.*, 342,) and as succeeding to the rights of Harris, proceeded to obtain a title to the reversion, by tendering to Frazier and wife the sum stipulated in the covenant, and demanding a conveyance in fee for the property. This tender was made in 1843, and for a consideration, having been withdrawn, his relation as lessee continued to April, 1864, when he again proposed to extinguish the rent, by paying the sum specified in the covenant, and demanding a deed in fee-simple.

This being declined, unless paid in gold and silver, and Gelston insisting upon paying in legal tender notes, and hav-

ing paid the rent to the 1st of May, 1864, he filed his bill for a specific performance of the covenant. The Court of Appeals decided that Gelston was not entitled to the relief he asked—the specific performance of the covenant between himself and the complainant and her husband, because her trustee, Cabot, was not a party thereto, which was necessary under the provisions of the deed of trust.

The Court, in delivering its opinion, uses the following language: "Applying this test to the contract or covenant entered into with Harris by Frazier and his wife, in relation to the fee-simple interest in the property, we find that the trustee is no party to it, and cannot be bound by it. It is an agreement by Mrs. Frazier (with the concurrence of her husband only,) to sell and dispose of the entire fee-simple estate in the property, to the lessee, his heirs or assigns, at any time during the continuance of the lease, upon his paying or tendering payment of the stipulated price; but it lacks the consent and approbation of the trustee.

The deed conferring the power of sale and disposition, requires it to be testified by his uniting with the wife, in the due execution of the instrument; unless the trustee consent to the sale, in the way specified in the deed, (in the absence of fraud) a Court cannot treat him as a party to it, and decree him to perform it, and his execution of the deed would be necessary to convey to the purchaser the fee which is legally in him. The agreement is, therefore, without one essential party to it—the trustee."

This covenant was made with Harris, and, according to the testimony in the cause, it was supposed by the parties interested in its performance, to have been a stipulation entitling the lessee to a conveyance of the fee, when its terms were complied with, until its character was legally defined by the decision of the Court of Appeals.

The complainant, Mrs. Frazier, was one of the parties to that instrument, before the rights of the original lessee had been assigned to Gelston, who it seems, relied upon it as a

valid proceeding. To this extent, at least, she has been instrumental in affecting his conduct in regard to the rent, and such a proceeding involves a question of good faith and equitable estoppel.

Certainly, so far as there was any infringement of the provisions of the deed of trust, or a deviation from its strict requirements to her prejudice, the complainant can claim no superior equity to the respondent, and it would not be just, under such circumstances, to permit her to take advantage of her own wrong and have the settlement of the rent revised in order to give to her what she, after such a lapse of time, claims.

Although that covenant was not sufficient to bind her trustee in regard to the disposition of the property, yet the circumstance of its execution and annexation to the lease to Harris, when other parties are to be affected by her acts, must be considered by a Court of Equity in adjusting the rights of the parties according to the principles of justice and fair dealing, and ought to have its due weight upon the merits of her claim.

The parties, complainant and respondent, seemed to have confided in the validity of this covenant, and to have acted accordingly, until its true character became known to them. This may account for the omission of the complainant to take any steps towards enforcing full rent, knowing the reduction had been made under a compromise, induced by the construction given to the covenant by the respective parties.

" A Court of Equity does not, in general, relieve for mistake of law. Where a transaction is founded in mutual ignorance or mistake, not of fact, but of law, the Court will not relieve the parties from the consequences." *Story's Eq. Jur.,* sec. 136 ; *Hill on Trustees,* 220.

We think the doctrine of equitable estoppel may very justly be applied to the complainant, as to the recovery of any rent beyond that paid and accepted and acquiesced in as an acquittance between the parties.

Especially ought she be estopped after the lapse of such time and failure to make any effort, at law or in equity, to recover these rents now demanded. The Supreme Court, in *Bowman, et al. vs. Wotten,* 1 *Howard,* 189, has said, and it is worthy of all commendation, " that nothing can call forth a Court of Equity into activity, but conscience, good .faith and reasonable diligence. Where they are wanting the Court is passive and does nothing." There is a failure here to make out a case of conscience, good faith or reasonable diligence.

This Court, in the case of *Crook, et al. vs. Glenn, et al.,* 30 *Md.,* 55, determined that lapse of time would defeat the demand of a *cestui que trust,* although a *fême covert* or an *infant,* where there was a trustee competent to sue, but failed to do so in reasonable time. An *infant* or a *fême covert* may be bound by an equitable estoppel. *Hale vs. Timons,* 2 *Rich. Eq. R.,* 120 ; *Davis vs. Tingle,* 8 *B. Monroe,* 539 ; *Wright vs. Arnold,* 14 *B. Monroe,* 643.

Where the complainant and her trustee and agents, with knowledge that her claim for full rent, according to the lease, was refused by the respondent, have repeatedly acquiesced, through a long succession of years, and other interests involved, there is no sound reason why the remedial justice of a Court of Equity should be exercised for the relief of a party under such circumstances. It certainly is not the province of such a Court to encourage litigation by the support of claims stale and of doubtful equity at best, even if more industry had been employed to recover them.

. The complainant's claim is not objectionable alone upon the ground of the staleness of the demand, nor the want of due diligence in its prosecution ; but these circumstances considered with the other features of the case, have their due weight.

The fact of the complainant's execution of the covenant, although insufficient to accomplish the purpose designed, and her continued acquiescence in the receipt of the diminished rent of which she had full knowledge—the fact that she had

a trustee and other agents learned in law, to look after her interests, and being entitled herself beneficially to the property, with power to execute acquittances to her trustee or lessee—must, to some extent at least, operate to conclude her by her own acts, from successfully invoking the aid of a Court of Equity, and we think the equitable doctrine of estoppel may with justice be applied to her demand. We concur with the ruling of the Circuit Court, that the bill ought to be dismissed.

<em>Decree affirmed.</em>

(Decided 14th March, 1872.)